The question is whether complainant is entitled to cancel shares of its capital stock which were deposited under voting trusts in 1927 and which have not been delivered to voting trust certificate holders, although the trusts expired in 1937.
The complainant was formed in 1927 by a merger of older corporations. It issued three classes of stock and deposited all the stock in voting trusts, one trust for each class of stock, causing trust certificates to be delivered to the beneficial owners of the stock. The voting trust certificates certified that the holder "will be entitled to receive, as hereinafter provided, on June 20th, 1937, a certificate" for a certain number of shares of the stock of complainant. "This certificate is issued pursuant to, and the rights of the holders hereof are subject to and limited by, the terms and provisions of a certain Voting Trust Agreement dated as of July 1st, 1937, * * * to all the provisions of which Voting Trust Agreement the holder of this certificate, by the acceptance hereof, assents and by which he is bound."
Each of the three voting trust agreements sets forth that, "This Agreement shall terminate in any event on June 20th, 1937, * * * but it may be terminated at any time prior thereto" by vote of the majority of the voting trustees. The trustees did not, however, exercise their power to terminate the agreement prior to June 20th, 1937. The agreement further provides that on June 20th, 1937, or upon the earlier termination of the agreement, the trustees shall deliver or cause to be delivered stock certificates to the holders of the voting trust certificates upon the surrender thereof. I must now quote at some length from the agreement:
"At any time subsequent to ten days after the termination of this Agreement, the Voting Trustees may deposit with their Agent and Depositary hereunder certificates representing (here is stated the class *Page 313 
of stock) stock, duly endorsed for transfer, in blank, or accompanied by proper instruments of assignment and transfer, duly executed in blank, representing the number of shares of stock of the Company called for by the voting trust certificates * * * then outstanding * * * with authority in writing to such Agent and Depository to deliver such stock certificates in exchange for voting trust certificates * * * when and as surrendered as herein provided; and upon such deposit all further liability of the Voting Trustees or any of them for the delivery of such stock certificates upon surrender of voting trust certificates * * * shall cease and determine and the Voting Trustees shall not be required to take any further action of any nature hereunder. * * * If within six years after such deposit, any voting trust certificates * * * shall not have been surrendered for exchange, the Agent and Depository shall deliver the shares of stock on deposit at that time * * * to the Company. All shares of stock of the Company so received by the Company shall be forthwith canceled, and no stock shall be issued in lieu thereof or in exchange therefor."
The company contends that this provision has become operative and that it has a right to cancel shares of a market value of about $200,000 represented by voting trust certificates which have never been surrendered by the holders thereof.
The agent and depositary of the trustees, appointed by the agreement, was the Bankers Trust Company. It had other duties under the agreement than those appearing in the passage above quoted. At the inception of the trust, it received the deposit of the stock certificates which were issued to the trustees and it was instructed to retain possession thereof during the period of the trust; it was agent of the trustees to execute and deliver the trust certificates and it was named transfer agent for the trust certificates. And the Bankers Trust Company was also the transfer agent for the stock of the complainant. So when June 20th, 1937, approached, the Trust Company had on hand the stock certificates standing in the name of the trustees, the register of voting trust certificates, and was possessed of all facilities for making the exchange of the stock for the voting trust certificates.
On June 15th, 1937, the trustees gave to the Trust Company a document entitled, "Letter of Instructions." By it, they informed the company that the trust agreement would expire by limitation June 21st, 1937, inasmuch as June 20th *Page 314 
was a Sunday. They instructed the company to notify the holders of the voting trust certificates of the expiration of the trust, and to transfer from time to time the stock certificates "now held by you" to the holders of the trust certificates against the surrender of the latter certificates.
"If at the expiration of six (6) years from June 21, 1937 (viz. on and after June 21, 1943) any voting trust certificates * * * shall not have been surrendered for exchange, Bankers Trust Company as agent and depositary of the undersigned Voting Trustees shall deliver the shares of stock on deposit at that time * * * to the Company."
Enclosed with the letter of instructions was a power of attorney to transfer the stock standing in the name of the trustees.
The instructions were obeyed. Beginning on June 21st, 1937, the Trust Company delivered stock in exchange for surrendered trust certificates and continued this process for six years, or until June 21st, 1943. At the close of business that day, the Trust Company still held certificates for forty-three shares of prior preference stock, 458 shares of Class A stock, and 22,377 shares of common stock, corresponding to trust certificates which still remained outstanding. Later, the stock certificates were delivered to the complainant and are the subject of this suit.
Prior to June 21st, 1943, the defendants were the equitable owners of shares of stock worth many thousands of dollars.O'Grady v. U.S. Ind. Tel. Co., 71 Atl. Rep. 1040. At the close of that day, if we accept complainant's contention, they were divested of their property without compensation, in consequence of their default in presenting to the trustees their voting trust certificates. It is familiar doctrine that the law disfavors forfeitures. Provisions of a contract relied upon to work a forfeiture or quasi-forfeiture are strictly construed and the event upon which a forfeiture is claimed must be within both the spirit and the letter of the contract, or no forfeiture results. 17 C.J.S. 742; 12 Am. Jur. 1016.
The voting trust agreement clearly contemplated that the trustees should, in the first instance, be responsible for the distribution of the stock certificates in exchange for the voting *Page 315 
trust certificates. But the agreement also gave the trustees the right, if they so desired, to rid themselves of this burden "at any time subsequent to 10 days after the termination of this Agreement." Thereupon, the Bankers Trust Company would take over the function, and then, and not until then, would begin the six-year period leading to cancellation of the stock shares. The complainant relies on the trustees' letter of instructions to the Trust Company. This letter authorized the Trust Company to begin the process of delivering stock certificates immediately on termination of the trust, June 21st, and must have meant that the Trust Company should do so as the representative or alter ego
of the trustees. There is nothing in the letter which indicates that the Trust Company should be the representative of the trustees from June 21st to a certain time subsequent to ten days thereafter, and then act in a different capacity, namely, as the trustees' successor in the function of delivering the stock certificates. There is nothing in the letter, or elsewhere in the case which indicates that the trustees made, or intended to make, the transfer of responsibility which the agreement permitted. So long as the Trust Company acted under the instructions contained in the letter of June 15th, it acted in a single capacity, which I take to have been that of representative of the trustees.
Complainant, however, points to another section of the trust agreement whereby the trustees were "empowered to construe this agreement, and their construction of the same shall be final, conclusive and binding upon all holders of voting trust certificates and all other parties interested." Complainant says that the direction in the letter of instructions, that the Trust Company should deliver to complainant all shares of stock still on deposit June 21st, 1943, evidences a construction of the agreement by the trustees to the effect that such shares were subject to forfeiture, and the construction is conclusive upon the defendants.
A clause of this kind constitutes the trustees as arbiters, but it does not empower them to strike a term from the contract, or to insert something new. They cannot, for instance, erase the words "at any time after the expiration of ten days" *Page 316 
and so absolve themselves of the duty of delivering stock certificates immediately upon the termination of the trust. Their authority is limited to a determination of the meaning of ambiguous, or conflicting provisions of the contract. And the power conferred upon the trustees cannot avail any of the interested parties, unless it be exercised, that is, unless the trustees consciously make a construction of the contract. Their overlooking or disregarding some of the provisions of the agreement is not the equivalent of construing them. In the present instance, the terms of the contract providing for the forfeiture of shares are unambiguous to this extent: That the forfeiture does not take place until six years after the trustees in their discretion decide to terminate their responsibility for delivering the shares to the beneficiaries and put their decision into effect, and further that they could not take such action until ten days after the expiration of the trust. Furthermore, it does not appear to me that the trustees considered the matter and reached a contrary construction of the contract.
The event specified in the agreement upon which complainant may cancel the stock, has not occurred.