**CATERPILLAR TRACTOR CO., a Corporation, Appellant,**

v.

**COLLINS MACHINERY CO., a Corporation, Appellee.**

No. 16720.

United States Court of Appeals
Ninth Circuit.

Dec. 21, 1960.

Rehearing Denied Feb. 17, 1961.

———◆———

Jones, Grey, Kehoe, Hooper & Olsen, Albert Olsen, Seattle, Wash., for appellant.

Ryan, Askren, Mathewson, Carlson & Bush, Raymond C. Swanson, Douglas R. Hendel, Seattle, Wash., for appellee.

Before ORR, MERRILL, and KOELSCH, Circuit Judges.

ORR, Circuit Judge.

Appellant is a large concern, doing business on a nation-wide scale. In the sale and distribution of its products it establishes dealerships and allots to each dealer a certain territory within which to sell appellant's machines, attachments and parts. Prior to June 13, 1952, Western Tractor and Equipment Co. (hereinafter "Western") was distributor of appellant's products in sixteen counties in the state of Washington. On that date appellant served notice on Western that the dealership was terminated. Three days later the parties to this suit signed a written agreement whereby appellee became appellant's new distributor in nine of these counties. The written agreement was a uniform one used by appellant with all its distributors and identical in all relevant parts to the agreement appellant previously had with Western. We detail certain of its provisions which are of importance in the solution of this appeal:

"3. The term another distributor as used in this agreement refers to a person, firm or corporation, other than The Distributor, who purchases the products manufactured and offered for sale by The Manufacturer, for resale under an agreement with The Manufacturer similar to this agreement, and whose service territory is within continental United States of America, Alaska, Canada and Newfoundland * * *.

5. If another distributor, * *, shall make sales of Machines to purchasers for use in The Distributor's Service Territory, The Manufacturer shall pay to The Distributor five per cent (5%) of The Manufacturer's current list prices thereon if such purchasers maintain buying offices in such other distributor's service territory, and fifteen per cent (15%) of such current list prices thereon if such purchasers do not maintain buying offices in such other distributor's service territory.

8.1. (a) If * * * another distributor shall as a result of solicitation make sales of Attachments or Parts for use in The Distributor's Service Territory, The Manufacturer will pay to The Distributor one-fourth (¼) of The Manufacturer's then current dealer's net prices of such Attachments and one-third (⅓) of such prices of such Parts.

9. Notwithstanding any of the foregoing provisions in reference to payments by The Manufacturer, The Distributor shall not be entitled to receive any such payments upon any sales until either full payment has been made, or acceptable settlement has been delivered to The Manufacturer for the Machine, Attachment or Part so sold; * * *.

10. The amounts to be paid by The Manufacturer to The Distributor as provided in paragraphs 5, 6, 7, and 8 of this agreement are the respective amounts which those making such sales are required to pay to The Manufacturer by reason thereof, and The Manufacturer shall not pay such amounts to The Distributor unless and until The Manufacturer has collected such amounts from those who are thus required to pay the same to The Manufacturer.

29. * * * The Manufacturer's decision shall be final and binding upon The Distributor, as to what use constituted initial substantial use, as to the place where initial substantial use occurred, as to what is another manufacturer, * * *,

as to whether a purchaser maintains a buying office in any particular place, as to whether a sale is made as a result of a distributor's or dealer's solicitation, as to the place where solicitation occurred, as to whether The Distributor or some other distributor or dealer is entitled to receive or retain any payment made or to be made by The Manufacturer under the terms of this agreement, and as to whether The Distributor or some other distributor or dealer is obligated to make any such payment to The Manufacturer.

38. Either party may at any time terminate this agreement by written notice of its election so to do, * * *.

39. Upon such termination by The Manufacturer, The Manufacturer shall cancel all unfilled orders except for such Machines, Engines, Equipment, Attachments, or Parts as have been previously sold by The Distributor, and shall re-purchase from The Distributor and The Distributor shall thereupon sell to The Manufacturer, all Machines, Engines, Equipment, Attachments and Parts not previously sold by The Distributor * * *.

44. * * * If any rights given to The Distributor hereunder conflict in any way with rights heretofore granted by The Manufacturer, the rights of The Distributor shall not become effective until the termination of the conflicting rights."

At the time appellant's agreement with Western was cancelled on June 13, 1952, Western had on hand a considerable quantity of machines, attachments and parts. In addition Western had placed orders with appellant for thirteen additional machines; appellant had accepted all of these orders prior to June 16, 1952 (when appellee became the new distributor) but had made no shipments to Western before that time. During the next eighteen months appellant delivered the thirteen machines to Western and Western sold these machines plus additional machines, attachments and parts from its old inventory to customers in appellee's territory. Upon learning of this appellee filed claims for territorial infringement fees with appellant. Appellant disallowed these claims on the ground that Western's distributorship had terminated on June 13, 1952, and therefore Western was not "another distributor" within the terms of the distributorship agreement (paragraphs 5 and 8.1). Appellee did not attempt to press its claims by legal action before October 2, 1957, the date when its distributorship was cancelled by appellant. Thereafter appellee brought an action, alleging that Western was "another distributor" within the terms of the agreement and that appellee was therefore entitled to infringement fees. Appellant denied this and also defended on the grounds that appellee's claim was barred by paragraphs 9, 10, 29 and 44 of the distributorship agreement and that appellee had waived any legal claim it might have had for these fees. The trial court made the following findings, among others:

"8. Plaintiff's distributorship agreement of June 16, 1952, * * * was prepared entirely by defendant, and plaintiff was given no opportunity to negotiate regarding any of the terms and conditions thereof.

"15. Western ordered all of the machines, equipped with Caterpillar products, referred to in Findings of Fact XVI through XXXIII, prior to June 13, 1952, and each of said orders was accepted by defendant prior to June 13, 1952; Western was a corporation who purchased all of said machines, attachments, parts and other items, and all were products manufactured and offered for sale by defendant, for resale under an agreement with defendant, similar to the Distributor's Sales and Service Agreement of June 16, 1952, between plaintiff and defendant; at the time Western agreed to buy and defendant agreed to sell

all of said products, Western had a Service Territory within the continental United States of America; at all times material herein, Western was another distributor within the meaning of plaintiff's distributorship agreement with defendant (* * *).

"48. Western was required to pay defendant infringement fees on account of the sales it made of the defendant's products which serve as the basis of plaintiff's claim in this action; defendant did not collect any sums of money in the nature of infringement fees from Western on account of said sales because defendant did not make a good faith effort, or any effort, to collect same.

"51. None of the defendant's products involved in this action had been sold by Western prior to either June 13, 1952, or to June 16, 1952; * * *; the Court further finds that 'orders from customers' do not constitute sales and that if Western had orders from customers prior to June 13, 1952, such products so ordered were not sold by Western prior to June 13, 1952; * * *

"56. Paragraph 29 of plaintiff's Distributor's Sales and Service Agreement of June 16, 1952, does not apply to the questions presented in this action; the Court finds that defendant made no decision, within the meaning of said paragraph 29, which would apply to the specific facts involved in this action, nor which would be final and binding upon plaintiff; the Court further finds that if any decision was made, within the meaning of said paragraph 29, the same was arbitrary, unreasonable, not supported by the facts, not made in good faith, and therefore not binding upon the plaintiff or the Court.

"58. The Court finds there was no * * * waiver or intended waiver of any right of action or of any part of any right of action

based upon the facts in this action; * * *."

 Appellant contends that the terms of appellee's distributorship contract limit recovery of infringement fees to sales by another distributor which was a distributor, had a territory, and was operating under a similar contract at the time this contract was entered into and also at the time the alleged infringing sales were made; therefore, appellant says, since Western's distributorship and contract were cancelled before the contract with appellee was entered into, Western was not "another distributor" within the terms of paragraphs 5 and 8.1 (supra). Paragraph 3 of the contract defines "another distributor" as "one who *purchases* the products manufactured and offered for sale by The Manufacturer, for resale under an agreement with The Manufacturer similar to this agreement". (Emphasis added.) This definition places all emphasis on the time of purchase, not the time of resale. The apparent purpose of the whole infringement arrangement is to compensate the distributor for sales in his territory by another who has acquired the goods involved from the Manufacturer as a *distributor* (as contrasted with a private individual or firm to whom the Manufacturer might sell directly). It is undisputed that Western was still a distributor at the time that it submitted and appellant accepted the orders involved here, and it is clear that appellant fulfilled these orders as those of a distributor. These actions clearly bring Western within the definition of "another distributor" insofar as these machines, attachments and parts are concerned. The contract may admit of other interpretations, but it is settled law that when two inconsistent interpretations of a contract are advanced the construction which is unfavorable to the drafter shall be adopted. Clise Investment Co. v. Stone, 1932, 168 Wash. 617, 620–621, 13 P.2d 9, 11. The district court's conclusion that Western was "another distributor" for purposes

of the infringement provisions is sustained.

■ Appellant further argues that even though Western be "another distributor", Western was entitled to have the disputed machines delivered to it under paragraph 39 of the uniform distributorship contract (supra) since they had been "previously sold", and that paragraph 44 of appellee's contract makes appellee's rights subject to these prior rights of Western. Appellant relies on the testimony of Western's officers, who testified that Western had prior orders from customers for all of the machines involved here. However, these same officers testified that it was customary in this business for prospective customers to place orders with the representatives of several different manufacturers and then purchase from the one who got them a machine first, and that only about half of the machines ordered would actually be sold to the customers for whom they were originally ordered. It is clear that such orders are not sales and that Western had not already "sold" the machines it had ordered from appellant.

■ Appellant additionally argues that appellee's recovery is barred by paragraphs 9 and 10 of the distributorship agreement (supra), which provide that appellee is not entitled to receive infringement payments from appellant until appellant has collected same from the infringing distributor. The requirement that appellant make a good faith attempt to collect from the infringing distributor is implicit in these conditions, and appellant admittedly made no attempt whatever to collect from Western for the infringements involved here. We conclude that Western, having purchased these machines, attachments and parts for resale as a distributor and under a distributorship agreement, was bound by that agreement's restrictions on the resale thereof even though the agreement itself had purportedly been cancelled in the meantime. This interpretation is supported by paragraph 10, which provides that the infringing distributor's liability is coextensive with the Manufacturer's liability to the infringed distributor. Since appellant's failure to collect from Western was due to its own wilful neglect, paragraphs 9 and 10 constitute no bar to appellee's recovery. See Vance v. Mutual Gold Corp., 1940, 6 Wash.2d 466, 478, 108 P.2d 799, 805.

■ Another argument presented by appellant is that paragraph 29 (supra) of the distributorship agreement makes appellant's decision that Western was not another distributor absolutely binding even though erroneous. This contention is without merit for several reasons: (1) We read paragraph 29 to provide that appellant shall have the right to determine whether or not an infringement of a distributor's territory has occurred. Here there was no dispute as to this, the only question being whether the admitted infringement was by "another distributor". (2) To apply paragraph 29 as appellant urges and thus give one party to the contract power to conclusively interpret the terms of the contract upon which its own liability to the other party depends would be invalid for it would make the contract illusory. A provision thus construed is far different from one giving a disinterested third person, not a party to the contract, power to arbitrate disputes between those who are parties. (3) Appellant's assistant sales manager testified that appellant made no attempt to get from Western any of the facts relating to the sales involved in the instant case; the evidence thus supports the trial court's conclusion that appellant did not make a decision under paragraph 29 and that if it did such decision was arbitrary and unreasonable.

■■ Appellant raises the question whether appellee waived any right it may have had to take legal action to enforce its alleged claims. Waiver is an intentional and voluntary relinquishment of a known right. O'Connor v. Tesdale, 1949, 34 Wash.2d 259, 263, 209 P.2d 274, 276. It may be manifested by actions, but such actions must be

452

inconsistent with any other intention than to waive. Bowman v. Webster, 1954, 44 Wash.2d 667, 669, 269 P.2d 960, 961. The mere fact that the other party is mistakenly led to believe there's been a waiver is not enough unless that party relies thereon to his detriment, in which case there's an estoppel. There is no evidence of any detrimental reliance by appellant, so the only question is whether appellee conducted itself in a manner inconsistent with any other intention than to waive.

■ On September 5, 1952, appellee wrote appellant submitting its claims for infringement fees. On September 11, 1952, appellant replied, denying the claims for the reason hereinbefore stated. On September 29, 1952, appellee again wrote appellant; in this letter appellee set forth in detail why it thought appellant's position was incorrect and appellee was entitled to recover. This letter was enclosed with another one dated October 8, 1952, in which appellee said its reasons for sending these letters were to establish appellee's position and to call attention to ambiguities in the Distributorship Sales and Service Agreement which should be corrected. The letter concluded "* * * rather than make a legal issue of this matter, we are attempting to be cooperative and at the same time make known our business position which we believe to be fair and reasonable." This last paragraph was also quoted in a letter written by appellee's attorney to one of appellant's high officials on October 10, 1952; that letter also states, "The matter we discussed on the telephone several days ago has been handled in the manner I told you it would be, and you have no reason to expect any litigation." Appellee's attorney testified that in the telephone conversation referred to appellant's official had said it would be a terrible mistake for a new Caterpillar dealer to start right out suing the parent company, and that he (appellee's attorney) had replied that appellee wasn't suing but was protecting its legal rights so far as the claim was concerned.

We fail to see wherein the above quoted letters show a clear intention or for that matter any intention to waive the claims involved. True, the letters state that appellee does not intend to sue at that time, but they in no way imply that appellee is abandoning its claim. This is made even clearer by a subsequent letter from appellee to appellant dated October 15, 1952, later in date than all of the letters discussed above, which sets out in complete formal detail ten claims for infringement fees and asks for "prompt attention to these claims for reimbursement". Appellee's failure to sue at any time prior to October 1, 1957, is readily understandable in view of paragraph 38 of the distributorship agreement (which makes it terminable at will by either party) and the implied warning which appellee's attorney received in his telephone conversation with appellant's representative. There was no waiver.

■ The district court awarded appellee interest at the rate of six per cent per annum from the time each of the infringing sales by Western occurred. Appellant assigns this as error. Under Washington law interest is allowed on all claims that are liquidated or readily ascertainable by mathematical computations or by reference to standards prescribed in the contract—in other words where it is not necessary to rely upon opinion or discretion. Mall Tool Co. v. Far West Equipment Co., 1954, 45 Wash. 2d 158, 273 P.2d 652. The distributorship agreement in the instant case sets forth precise standards for computing the infringement fees on interterritorial sales of machines, attachments and parts, respectively. The number of alleged infringing sales involved and the list price of each appear from the record not to have been contested; the contested issue looming large between the parties was whether Western was "another distributor". The trial court determined the interest due by the application of fixed standards contained in the contract to the list prices of the goods sold.

Appellant claims that other findings of the trial court are erroneous. All of these assignments of error are either without merit or irrelevant.

Affirmed.