L AND A CONTRACTING COMPANY, a Mississippi corporation, Plaintiff,

v.

John T. OXLEY, Defendant.

Civ. No. 6238.

United States District Court
N. D. Oklahoma.

Dec. 16, 1966.

---

Sanders, McElroy & Whitten, Tulsa, Okl., for plaintiff.

Conner, Winters, Randolph & Ballaine, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

In this diversity case, the plaintiff L and A Contracting Company (L and A) sues the defendant John T. Oxley (Oxley) for the sum of $40,107.28, with interest which is alleged to be the balance due and owing by Oxley to L and A as the result of a contract between them under which L and A furnished all the materials, labor and equipment to develop 420 acres of land in Martin County, Florida for a citrus grove. The defendant alleges that the plaintiff failed to perform the contract as required by its terms and the pertinent plans and specifications thereto by reason of which the plaintiff is not entitled to recover herein, and by counterclaim, the defendant asserts that it will be necessary for him to expend $30,000.00 to accomplish the work which the plaintiff failed to properly perform under the contract and that by reason of such failure on the part of the plaintiff, the defendant has sustained additional damages in the sum of $350,000.00 by reason of delay sustained by him in the planting of said land with citrus trees. By this counterclaim, the defendant seeks damages against the plaintiff in the total sum of $380,000.00.

The threshold question for the Court is a determination as to whether or not the contract involved is a lump sum contract in the amount of $68,091.76 or is a unit rate contract providing for the plaintiff to be compensated for work performed on the basis of prescribed unit rates for units of work accomplished. The plaintiff claims that the contract is a unit rate contract, that such was the intent of the parties and that based on the prescribed unit rates and work accomplished, the defendant became indebted to plaintiff in the sum of $85,168.80 as shown by the final progress report submitted on the project by the project

engineer. The defendant claims that the contract is a lump sum contract obligating him to pay only the stated sum of $68,091.76 plus an additional charge for clearing any stumps encountered and that this is the total amount that he would owe for the work necessary to accomplish the project in connection with the contract between the parties and the plans and specifications pertinent thereto. The defendant employed the engineering firm of Harris, Wood and Associates of Florida to prepare the plans and specifications and to supervise the work as project engineer. Mr. Harris of the engineering firm handled the matter for the defendant including the preparation of the plans and specifications but after the contract was entered into between the parties hereto and work was underway, the engineering firm dissolved. Mr. Harris became engaged elsewhere and Mr. Wood operated the engineering firm and supervised this project. It was the testimony of Mr. Harris, who appeared as a witness for the defendant, that the contract between the parties (the model form of which he supplied and which was sent out with the invitations to bid) was intended to be and was a unit rate or price contract and that this was the customary manner of doing this type of work in this area in Florida. Neither the defendant nor Mr. Harris could testify to any specific conversations between themselves about whether or not the contract was intended to be a lump sum or a unit rate contract. As work progressed the engineering firm submitted several monthly progress reports which were based on unit rate or price computations. Several of these were paid by the defendant without objection. The testimony of the plaintiff was to the effect that the contract was on a unit rate basis and was so intended by the parties thereto. The defendant testified that it was a lump sum contract.

The Court finds and concludes from an examination of the contract that the same is ambiguous and resort therefor may properly be made to parol evidence as to the intent of the parties in respect to whether the contract was lump sum or unit rate. 15 Oklahoma Statutes 162; Ramey v. Koons, (5th Cir.–1956) 230 F.2d 802; Rea Construction Co. v. B. B. McCormick & Sons, Inc., (5th Cir.–1958) 255 F.2d 257; Caterpillar Tractor Co. v. Collins Machinery Co., (9th Cir.–1960) 286 F.2d 446. The Court further finds and concludes from the language and provisions of the contract, the testimony of the witnesses and conduct thereunder that it was the intent of the parties that the contract be performed and paid on the basis of the prescribed unit rates or prices. This issue is therefore resolved in favor of the plaintiff who has sustained his burden of proof on this point.

The next issue for consideration and determination is the effect of the provisions of the contract relating to the responsibilities of the project engineer selected and employed by the defendant. The contract provides: "The engineers will check work completed for compliance to the plans and specifications and adherence to soil conservation practices." And, "The engineers, Harris, Wood and Associates will pass upon all work performed, the manner performed and whether diligently pursued." The plaintiff claims that these provisions of the contract empower and authorize the project engineer to make final determinations which are binding on the parties to the contract, as to the manner of performance of the work involved and the amount of compensation due the plaintiff from the defendant for the work accomplished. The defendant denies that this language has this effect and denies that the project engineer may make final determinations in either area which are binding and conclusive on the parties, but contends that the Court must look to and determine the matter of performance under the contract. The project engineer under date of March 9, 1965, submitted a final report on the project and under date of July 6, 1965, issued a further letter in which the project engineer stated that the final report (March 9, 1965) con-

stituted acceptance of the job by the engineers.

■ The Court finds and concludes that the language employed by the parties in the contract with relation to the responsibilities of the project engineer falls short of giving to the engineer the power and authority to make determinations, as either an arbitrator or as an engineer, regarding the plans and specifications, performance of work or the amount due under the contract which are to be final, binding and conclusive on the parties. Franklinville Realty Co. v. Arnold Constr. Co., (5th Cir.—1941) 120 F.2d 144; (5 Cir.) 132 F.2d 828.

The Court determines therefore that the Court should examine the manner of performance under the contract and plans and specifications and while the evidence of the project engineer should be considered the same is not conclusive, final and binding on the parties or the Court.

Regarding performance under the contract and plans and specifications by the plaintiff, the evidence is in direct conflict. The defendant claims that the plaintiff failed to perform in compliance with the contract and the plans and specifications thereto. The evidence of the defendant narrows this complaint to the manner in which the plaintiff constructed the water furrow ditches and the adjacent planting beds. The defendant does not, by evidence, support any other failure of performance on the part of the plaintiff. In essence then, the complaint of the defendant is that the plaintiff failed to construct or dig the water furrow ditches to the prescribed depth of 22 inches and the prescribed width of 24 feet and in failing to do so, did not obtain enough soil or fill from that operation to build up the adjacent planting beds to the prescribed height. The plans and specifications do not fix a prescribed height in inches to be attained for the planting beds from the soil or fill from the adjacent water furrow ditches, but the same is calculated on a cubic yard basis. The defendant's witness, Mr. Harris, the engineer, estimated the planting bed height at the center should be approxi-

mately 8 inches above the original level of the ground and the plaintiff's superintendent in charge of the project agreed that this height should be obtained from the soil or fill from excavating the adjacent water furrow ditches. It is therefore the complaint of the defendant that the water furrow ditches were not constructed deep enough and wide enough and the planting beds are therefore not high enough and give a flat appearance, whereas, they should have a higher and more rounded appearance. The vertical distance from the top of the bed to the bottom of the ditch should be approximately 30 inches. The defendant claims and produced evidence to the effect that this condition did not generally prevail in the 420 acre tract.

To the contrary, the evidence of the plaintiff was that all ditches were dug to the prescribed depth of 22 inches and width of 24 feet and that the soil or fill therefrom was moved to the adjacent planting beds which had an approximate 8-inch height when this operation was completed. The evidence of plaintiff is also to the effect that the water furrow ditches were cut to the prescribed width of 24 feet according to stakes set out by the project engineer and that the anticipated 30 inches vertical distance between the bottom of the furrow ditches and the center height of the adjacent planting beds, was obtained throughout the 420 acre tract. The plaintiff, by evidence, claims that the water furrow ditches were centered 60 feet apart and that each planting bed was 36 feet in width with 12 feet of water furrow ditch on each side sloping down to the bottom of the ditch. Plaintiff further shows by evidence that the parabolic curve of a planting bed would start at zero at the edges of each planting bed and rise to a height of approximately 8 inches at the center of the planting bed. And that with an approximate 8 inch height at the center of a planting bed with a width of 36 feet, the same would give a flat appearance but, nonetheless, each planting bed was constructed in strict accordance with the plans and specifications

prepared by the engineer selected by the defendant. The engineer on the project, Mr. Wood, testified that the plaintiff properly performed the work required by the contract and the plans and specifications and did so in full and complete compliance therewith, as evidenced by his final report and his acceptance of the plaintiff's work as engineer for the project.

Thus, the controversy and the conflicting evidence pertains to whether, when the project was completed, the plaintiff had constructed the water furrow ditches to the prescribed depth and width and placed the soil therefrom on the adjacent planting beds to the anticipated height. It appears from the evidence that when the plaintiff completed the project around January 1, 1965, the ground was bare of any vegetation. Unquestionably, erosion took place as well as a settling of the fresh soil on the planting beds both of which processes significantly served to lower the height of the planting beds and deposit silt or soil in the water furrow ditches. This, of course, reduced the 30 inch vertical distance between the two. Under the evidence, the project was completed as far as the water furrow ditches and planting beds are concerned, before January 1, 1965. Measurements, at various locations, were made by the defendant's witnesses in April of 1965 and other testimony pertaining to the condition of the tract came from observations as late as November of 1966. The defendant himself did not observe the project at any time during construction, nor until late March, 1965, at which time he was complaining of the overage billed for rough grading and that the planting beds were not high enough and did not look like those of other nearby groves. The defendant planted no cover crop on the tract upon the same being completed in January of 1965, or earlier as planting would have been possible on the beds as they were completed by blocks. Nor, did he at any time undertake the planting of orange trees or even have the same on order.

The Court finds and concludes from a preponderance of the evidence that the plaintiff accomplished the construction of the water furrow ditches and the construction of the planting beds in the manner required by the contract and the plans and specifications thereto. It is realized that this determination is made on conflicting evidence, but in the light of erosion and settling and the passage of time, the Court adopts as true and correct the testimony of the construction superintendent and the project engineer to the effect that upon the completion of the project and the acceptance of the work by the engineer, it conformed to the plans and specifications in all matters and particularly with reference to the construction of the water furrow ditches and planting beds. 6 A.L.R.3d, Section 2, page 1397.

In this connection, the Court takes particular note of the fact that Mr. Harris, the engineer employed by the defendant and who prepared the plans and specifications and who testified on behalf of the defendant, did not prescribe in inches, the center height of the planting beds and makes the further observation that an 8-inch height at the crown or center of the parabolic curve over a 36-foot width would give a rather flat appearance. This would become even more so with the failure to plant a cover crop on the bare ground to retard erosion into the ditches. Also there was a lack of normal maintenance in connection with the water furrow ditches. Under the evidence these ditches need to be cleaned out with machinery on an average of two or three times per year with the silt or soil in the ditches being conveyed bank onto the planting beds.

The Court therefore finds and concludes that the project was completed in time and in accordance with the contract, plans and specifications by the plaintiff and the complaints and counterclaim of the defendant are therefore rejected and denied by the Court.

Counsel for the plaintiff will prepare an appropriate judgment based on the foregoing for the amount due and unpaid

on the contract as shown by the final progress report of the project engineer with interest. The judgment will further dismiss the counterclaim of the defendant. Such judgment will be submitted to counsel for the defendant and then to the Court for signature and entry herein. Rule 58, Federal Rules of Civil Procedure, 28 U. S. Code.