**DENVER FOUNDATION,**
Plaintiff–Appellee,

v.

**WELLS FARGO BANK, N.A.,**
Defendant–Appellant.

No. 04CA1403.

Colorado Court of Appeals,
Div. II.

Oct. 20, 2005.

Certiorari Granted Aug. 14, 2006.

Sherman & Howard, L.L.C., Christopher Lane, Bridget K. Sullivan, Denver, Colorado, for Plaintiff–Appellee.

Baker and Hostetler, LLP, Marc D. Flink, Casie D. Collignon, Denver, Colorado, for Defendant–Appellant.

Davis, Graham & Stubbs, LLP, Ted R. Sikora, II, Andrea Wang, Denver, Colorado, for Amici Curiae Colorado Bankers Association, Bank One Trust Company, N.A., Cobiz Bank, N.A., First National Bank of Colorado, and American National Bank.

ROTHENBERG, J.

In this case involving the construction of a trust, Wells Fargo Bank, N.A. appeals the

probate court's order granting summary judgment in favor of the Denver Foundation. We reverse and remand with directions.

## I.   Background

The Denver Foundation is a community trust that was created in 1925 when it filed its original Declaration of Trust with the Colorado Secretary of State.   As originally constituted, the Denver Foundation could not hold legal title to or manage investment of funds donated for its endowment.   Donors gave money in trust, naming one of the Denver Foundation's constituent banks as trustee for the benefit of the Foundation.

Charles Sterne created such a trust in 1976.   It provided, in pertinent part, that he would receive the income from the trust during his lifetime, and that if he predeceased his wife, Dorothy Elder Sterne, she would receive the income during her lifetime.   The trust agreement also provided that upon both of their deaths, their assets would be held by United Bank of Denver in trust for the uses and purposes of the Denver Foundation.

Charles Sterne died in 1977, and the following year Dorothy Elder Sterne created a trust with the terms at issue here similar to those in her late husband's trust (Sterne–Elder Trust).   We refer to the Sternes collectively as the Settlor.

Wells Fargo is the successor to United Bank and is currently the trustee of the Sterne–Elder Trust.

The Sterne–Elder Trust incorporated by reference the Foundation's Declaration of Trust, which enumerated various powers over these trusts.   Those powers included modification.

In 1983, the Denver Foundation created a not-for-profit corporation with the same name (the Corporation) for its charitable purposes.   The Corporation is authorized to hold and manage assets and investments, and has many of the same powers as Wells Fargo.   According to an affidavit submitted by the president and chief executive of the Foundation, the Corporation now uses the services of approximately fifteen different money managers, and since 1983, "most donations

have been directly to the Foundation, rather than to trustee banks."

The Foundation's Declaration of Trust was amended in 1988 to reflect structural changes, and was amended again in 1997.

Dorothy Elder Sterne died in 2003, and when the Denver Foundation learned of her death, it requested Wells Fargo to transfer the trust principal to the Denver Foundation. Wells Fargo refused, and the Denver Foundation commenced this action, as beneficiary of the Sterne–Elder Trust, to compel Wells Fargo to transfer the trust assets.

Both parties agreed there were no genuine issues of fact in dispute and filed cross-motions for summary judgment.   After considering the parties' submissions, the court granted summary judgment in favor of the Foundation.

## II.   Motion in Limine and to Strike

█   As a threshold matter, we address Wells Fargo's contention that the probate court erred in its summary judgment ruling by (1) denying in part Wells Fargo's motion in limine and to strike, and (2) considering evidence regarding the evolution of the Denver Foundation and prior transfers from Wells Fargo of trust assets to the Denver Foundation.   We agree.

█   A ruling admitting evidence will not be overturned absent an abuse of discretion. *People in Interest of Yeager,* 93 P.3d 589 (Colo.App.2004).

█   If the settlor's intention is reflected in the document, then the document is unambiguous and a court will not consider extrinsic evidence to interpret it.   However, if the language of a trust is ambiguous, the court may consider extrinsic evidence to determine the meaning of the document.   *In re Trusts Created by Ferguson,* 929 P.2d 33 (Colo.App.1996)(*Ferguson* ).

█   Ambiguity exists in a written document where a clause of the document is susceptible of two interpretations.   *Bledsoe v. Hill,* 747 P.2d 10 (Colo.App.1987).

█   Here, neither party asserted that the documents were ambiguous.   It is true that

the parties disagreed regarding the meaning of Article IV of the 1925 Declaration of Trust. · The Denver Foundation contended this clause gave it the right to compel transfer of the principal of the Sterne–Elder Trust, while Wells Fargo maintained that the clause only addressed funds available for distribution. However, a mere disagreement between the parties as to the interpretation of an agreement does not, in itself, create an ambiguity. *Union Rural Elec. Ass'n, v. Pub. Utils. Comm'n,* 661 P.2d 247 (Colo.1983); *Employment Television Enters., LLC v. Barocas,* 100 P.3d 37 (Colo.App.2004).

We conclude the language of the trust documents is clear and unambiguous, and that language is controlling. Therefore, the probate court abused its discretion in admitting extrinsic evidence concerning Wells Fargo's prior transfers of trust assets.

Although Wells Fargo would be entitled to a remand for reconsideration by the probate court solely on this ground, we conclude it also is entitled to the other relief it seeks. Accordingly, we address its other · contentions.

### III. Motion for Summary Judgment

Wells Fargo contends that the probate court erred in granting summary judgment in favor of the Foundation, and that the court should have entered summary judgment in its favor. We agree.

We review the trial court's grant of summary judgment de novo. *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66 (Colo.2004).

Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814 (Colo. 2004). The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini v. Smith,* 42 P.3d 629, 632 (Colo.2002).

Here, the parties asserted in their cross-motions that there were no genuine issues of material fact, and that one of them was entitled to summary judgment. They further agree the trust documents are unambiguous. The issue is whether the Foundation was entitled to judgment as a matter of law. We conclude it was not. Summary judgment should have been entered for Wells Fargo.

### A. Settlor's Intent

In interpreting trust provisions, the settlor's intent must be given effect. *Ferguson, supra.* The settlor's intent is discerned from the entire instrument, *In re Estate of Daigle,* 642 P.2d 527 (Colo.App.1982), and when an instrument incorporates multiple documents, intent is determined by examining the documents as a whole. *Fuller & Co. v. Mountain States Inv. Builders,* 37 Colo. App. 201, 546 P.2d 977 (1975). In addition to the instrument itself, the court may consider relevant circumstances and laws in effect at the time the instrument was executed to determine the settlor's intent. *In re Belgard,* 829 P.2d 457 (Colo.App.1991).

In *Ferguson, supra,* the petitioners sought to terminate a trust and relied on representations by the trustee regarding when the trust would terminate. A division of this court stated: "[T]he interpretation of a written instrument, such as a trust, is a question of law. And, because the settlor's intent controls the interpretation of the [t]rust instrument, a trustee or beneficiary cannot vary the terms of a trust." *Ferguson, supra,* 929 P.2d at 36.

The Sterne–Elder Trust consists of two documents, the Sterne–Elder Memorial Trust Agreement of 1976 (Trust Agreement) and the Foundation's Declaration of Trust. The Declaration of Trust was incorporated into the Trust Agreement.

The Settlor created a tripartite relationship among the trust, the bank trustee, and the beneficiary, as evidenced by the following provisions in the Trust Agreement:

2. The Trustees shall hold, manage, invest, and reinvest the Trust Estate and shall collect the income thereof and shall

dispose of the net income (hereinafter called "income") and principal as follows:
. . .

(d) Upon the death of Settlor's wife, or upon Settlor's death, if she has not survived him, the principal of the Sterne–Elder Memorial Trust, together with the Income, shall be held by UNITED BANK OF DENVER NATIONAL ASSOCIATION, in trust, for the uses and purposes of the DENVER FOUNDATION, as established by that certain resolution and declaration of trust dated November 30, 1925 and amendments thereto, adopted and made by said Trustee corporation, a true copy of which, certified by an officer of said Trustee corporation, under its corporate seal, has been filed for record in the office of the Clerk of the Probate Court of the City and County of Denver, State of Colorado ... which instrument, as so filed and recorded, together with any amendment or amendments made or to be made thereto in accordance with the provisions thereof is hereby adopted as part of this Trust Agreement as if herein incorporated. If The Denver Foundation shall cease to exist in the future as now constituted and shall be succeeded by another organization, plan, group, or corporation which shall have substantially the same powers and perform substantially the same functions as The Denver Foundation now constituted, then, and in that event, the Trustee shall hold the principal of the Sterne–Elder Memorial Trust together with income, for the uses and purposes of such successor of The Denver Foundation. *Neither The Denver Foundation nor its Distribution Committee is authorized to direct disbursement of principal, or invade the principal, of such Trust.*

(Emphasis added.)

The Trust Agreement does not limit the duration of the trust or contain a termination provision. *See Colo. Nat'l Bank v. McCabe,* 143 Colo. 21, 353 P.2d 385 (1960)(the rule against perpetuities is inapplicable to charitable trusts, which may be perpetual). Thus, the trust language compels the initial conclusion that the Settlor intended to create a perpetual charitable trust managed by a bank as trustee for the benefit of the Foundation, or if it ceases to exist, "another organization, plan, group, or corporation which shall have substantially the same powers and perform substantially the same functions as The Denver Foundation now constituted."

At issue is whether other provisions of the Declaration of Trust, which were incorporated in the Trust Agreement, authorize the Foundation to access the trust principal and request that it be transferred to the Corporation. The Foundation makes several arguments which we address and reject in turn.

### B. 1925 Declaration of Trust

The Foundation contends the 1925 Declaration of Trust and the Trust Agreement—when interpreted as a single document—authorize the Foundation to compel Wells Fargo to transfer the principal of the Sterne–Elder Trust. We disagree.

### 1. Conclusive Construction by the Foundation

Initially, we reject the Foundation's argument that Article XI of the 1925 Declaration of Trust enables it to construe conclusively the Declaration of Trust, and that we are therefore bound by the Foundation's determination that it had the power to direct the transfer of funds.

Article XI provides:

The maker of any gift, grant, devise or bequest for the uses and purposes herein expressed, and upon and subject to the provisions hereof, and all persons claiming by, through or under him and each trustee by the acceptance thereof, shall be conclusively deemed to have agreed that the Trustees' Committee may, by resolution adopted by the affirmative vote of three-fourths of its members, voting per capita, when approved by resolution adopted by the affirmative vote of a majority of the members of the Distribution Committee, from time to time or at any time (1) modify, supplement or restrict the educational, charitable and benevolent uses and purposes to which the funds available for distribution may be applied herein; (2) change the method of appointment of the

members of the Distribution Committee or increase or reduce the number of its members; (3) *construe any provision of this resolution and declaration which construction and action thereunder in good faith shall be conclusive;* (4) supply any defect or omission herein which said Committee may then deem advisable to carry out the purposes of the Denver Foundation properly and effectively; (5) amend the provisions hereof in any respect which shall be consistent with the application of the entire net income and the principal of any gift, grant, devisee, or bequest for public, educational, charitable or benevolent uses and purposes and for no other use or purpose whatever; (6) terminate the Denver Foundation and all the powers and duties of the Distribution Committee with the effect provided in paragraph X.

(Emphasis added.)

■■■■■ A provision granting one party authority to construe a contract conclusively is invalid, *Caterpillar Tractor Co. v. Collins Mach. Co.,* 286 F.2d 446 (9th Cir.1960), and discretionary authority to construe provisions of trust agreements is subject to review by a court for reasonableness. *Kraut v. Wisc. Laborers Health Fund,* 992 F.2d 113 (7th Cir.1993); George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees, § 559 (2d ed. rev.1991).

■■■■■ Thus, unfettered discretion in interpreting trust agreements is contrary to public policy because it constitutes an attempt to oust the court of jurisdiction and is necessarily void. Bogert, *supra,* § 560 n.99. The power granted to one party conclusively to construe trust agreements is limited to a determination of the meaning of ambiguous or conflicting provisions. *United States Leather Co. v. McLeod,* 139 N.J. Eq. 311, 51 A.2d 11 (1947).

Accordingly, we reject the Foundation's argument that it may construe conclusively its Declaration of Trust to give it the ability to remove the Trust Agreement's restriction against invasion of principal and that we are bound by the Foundation's own construction.

## 2. Articles II and IV of the 1925 Declaration of Trust

It is undisputed that the Trust Agreement incorporated the Foundation's Declaration of Trust as it existed in 1976, and that the Declaration of Trust was amended between 1925 and 1976. The Foundation maintains that, by incorporating the Declaration of Trust into the Trust Agreement, the Foundation obtained the power to make distributions free of restrictions placed in the Trust Agreement, and to amend the Declaration of Trust through future generations. The Foundation further contends Articles II and IV of the 1925 Declaration of Trust expressly gave the Foundation the power to direct Wells Fargo to distribute the principal of the Sterne–Elder Trust to a corporation to be formed by the Foundation for its charitable purposes. The probate court agreed. We do not.

Article II of the 1925 Declaration of Trust provides that:

any such expressed desire of the maker shall be respected and observed, subject, however, in every case to the condition that if and whenever it shall appear to the Distribution Committee that circumstances have so changed since the execution of the instrument containing any gift, grant, devise or bequest as to render unnecessary, undesirable, impractical or impossible a literal compliance with the terms of such instrument, said Committee, by resolution adopted by affirmative vote of four members may at any time or, from time to time, direct the application of such gift, grant, devise or bequest to such other public, educational, charitable or benevolent purpose as, in their judgment, will most effectually accomplish the general purpose expressed in subdivision (1) paragraph IV without regard to and free from any specific restriction, limitation or direction contained in such instrument; provided, that, if the donor of any such gift or grant shall have reserved the right to control the income therefrom during the donor's life, then the rights of the Distribution Committee shall be effective only after the death, or adjudication of incompetency, of such donor.

██ Article II gives the Foundation the power to modify the trust documents when changed circumstances render the restrictions unnecessary, undesirable, or inconsistent with the charitable needs of the community. Modification is thus appropriate if it comports with either the *cy pres* doctrine or the doctrine of equitable deviation. *Niemann v. Vaughn Cmty Church*, 154 Wash.2d 365, 113 P.3d 463 (2005).

Under the *cy pres* doctrine, if property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible, impracticable, or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor. Restatement (Third) of Trusts § 67 (2003). *See In re Airline Ticket Comm'n Antitrust Litigation*, 307 F.3d 679, 682 (8th Cir.2002)("The *cy pres* doctrine takes its name from the Norman French expression, *cy pres comme possible*, which means 'as near as possible.' The doctrine originated to save testamentary charitable gifts that would otherwise fail." (citation omitted)).

The *cy pres* doctrine is inapplicable to the circumstances of this case because the purpose of the Sterne trust remains unchanged and there is no reason to think the intent of the Settlor's gift will fail if Wells Fargo remains in place as trustee.

██ The doctrine of equitable deviation grants courts broader discretion to permit deviation. "The court may modify an administrative or distributive provision of a trust, or direct or permit the trustee to deviate from an administrative or distributive provision, if because of circumstances not anticipated by the settlor the modification or deviation will further the purposes of the trust." Restatement (Third) of Trusts § 66(1); *see Niemann v. Vaughn Cmty Church, supra.* The objective of equitable deviation is not to disregard the settlor's intention, but to "give effect to what the settlor's intent probably would have been had the circumstances in question been anticipated." Restatement (Third) of Trusts § 66(1) cmt. a.

However, a change in the corporate structure of the Foundation alone is insufficient to render the restrictions in the Trust Agreement impossible, impracticable, or illegal to carry out the purpose of the Settlor. *In re Estate of Vallery*, 883 P.2d 24 (Colo.App. 1993). While we acknowledge the Foundation proffered evidence that it was realizing a greater return on its investments than was Wells Fargo, a potential increase in income has been held to be insufficient to render application of a trust agreement impracticable. *In re Will of Killin*, 703 P.2d 1323 (Colo.App.1985).

Here, regardless of the structural change, the Trust Agreement is capable of accomplishing the purpose of the trust, which is to ensure that the beneficiary—in this case, the Foundation—receives the interest, but not the principal, from the Sterne–Elder Trust.

We therefore conclude Article II of the 1925 Declaration of Trust does not authorize the Foundation to compel Wells Fargo to transfer the principal of the Sterne–Elder Trust.

Article IV of the 1925 Declaration of Trust provides:

> *Subject to the particular terms of any gift, grant, devise or bequest* as and only to the extent provided in Paragraph II:
>
> . . .
>
> (4) Each of the Trustees shall pay and disburse such portions of the net income or of the principal of the property held by them respectively, at such times and in such amounts as shall from time to time be ordered or directed by the Distribution Committee, and *in the distribution and application of funds available for distribution* hereunder, payments may be made . . . (c) to corporations or associations already formed to distribute and apply such funds to any one or more of such purposes, (d) to corporations or associations formed for any one or more of such purposes by

the Committee located in the City and County of Denver . . . .

(Emphasis added).

This article contemplates distribution methods for *funds that are available to beneficiaries*. Here, because the Settlor in the Trust Agreement expressly prohibited the Foundation from invading the principal of the trust, only the income was available for distribution to the beneficiary.

Accordingly, we conclude neither Article II nor Article IV of the 1925 Declaration of Trust authorized the distribution of the principal of the Sterne–Elder Trust.

### C.   1997 Declaration of Trust

We next address the Foundation's assertion that the 1997 Declaration of Trust authorizes it to access the principal of the Sterne–Elder Trust. The probate court agreed, and concluded certain provisions of the 1997 Declaration of Trust authorized the Foundation to require Wells Fargo to transfer the principal. We reach a different result.

The Foundation relies on Article 7–8.3 of the 1997 Declaration of Trust in support of its authority to compel Wells Fargo to transfer the principal of the Sterne–Elder Trust. However, Article 7–8.3 is similar to Article XI of the 1925 Declaration of Trust, and for the reasons set forth above, we conclude Article 7–8.3 does not authorize the Foundation to construe conclusively the language of the 1997 Declaration of Trust. *See Kraut v. Wisc Laborers Health Fund, supra; Caterpillar Tractor Co. v. Collins Machinery Co., supra;* Bogert *supra,* § 559.

Trusts may grant a third party the right to terminate or modify the trust. This right includes the power to amend a trust agreement after a settlor's death to take into account future changes in circumstances. Restatement (Third) of Trusts § 64(2).

The Trust Agreement authorized the Foundation to amend or modify the Declaration of Trust by incorporating the Foundation's Declaration of Trust then on file "together with any amendment or amendments made or to be made thereto in accordance with the provisions thereof."

The Declaration of Trust was amended several times, most recently in 1997. Article 3 of the 1997 Declaration of Trust states, as relevant here:

3–1.1   *Transfer of Funds to Corporation.* Each Trustee shall, within 10 days after the last day of each calendar quarter, pay and disburse to the [Denver Foundation non-profit] Corporation such portion of the net income and principal of each trust held by it hereunder as the Board of Trustees shall direct by written instrument signed by the Chair of the Board or the Executive Director of the Corporation.

3–1.2   *Distribution of Funds.* Subject to any applicable designations, restrictions and conditions, the Corporation shall distribute all funds received pursuant to Section 3–1.1 at such times, in such amounts, and to such individuals or entities as the Board of Trustees shall from time to time direct, by written instrument signed by the Chair of the Board of Trustees, any member of the Board of Trustees, the Executive Director of the Corporation or such other person or persons as may be designated by the Board of Trustees. For purposes of determining whether any instrument of gift, grant, devise or bequest imposes a restriction on distributions from any fund of the Foundation, the intent of the donor shall be construed in accordance with the provisions of Sections 15–1–1104 and 15–1–1105 of the Colorado Uniform Management of Institutional Funds Act.

The Foundation contends Article 3–1.1 grants the Foundation the power to direct disbursement of income or principal to the Foundation. However, Article 3, read in its entirety, refers to funds *available for distribution for charitable purposes,* and as we have previously stated, the Trust Agreement expressly prohibits the Foundation from invading the principal of the trust. Accordingly, we conclude the principal of the Sterne–Elder trust does not constitute funds "available for distribution for charitable purposes."

The probate court also relied on Article 2–3 of the 1997 Declaration of Trust, as well as the February 7, 2004, Resolution, which was adopted by the Foundation's Executive Com-

mittee and quoted earlier, purporting to eliminate the restrictions placed on the trust by the Settlor.

Article 2–3 of the 1997 Declaration of Trust provides:

> *Power to Modify Designations and Restrictions.* Notwithstanding anything to the contrary herein, the Board of Trustees, by resolution adopted by the affirmative vote of a majority of the members then in office, shall have the power to modify or eliminate any designation, restriction or condition on the use or distribution of funds for any specified charitable purposes or to specified organizations, or on the investment of funds, if in its sole judgment (without the necessity of the approval of any participating Trustee Bank, custodian or agent), such designation, restriction or condition becomes, in effect, unnecessary, undesirable, impractical, incapable of fulfillment, or inconsistent with the charitable needs of the community served by the Foundation.

However, Article 2–3 of the 1977 Declaration of Trust parallels Article II of the 1925 Declaration of Trust, and simply permits the Foundation the power to modify the trust documents when changed circumstances render the restrictions unnecessary, undesirable or inconsistent with the charitable needs of the community. It does not confer on the Foundation the power to invade the principal where, as here, the Settlor has expressly prohibited it. Because we have concluded modification is not appropriate here, Article 2–3 of the 1977 Declaration of Trust has no application.

In sum, we conclude that the 1997 Declaration of Trust does not authorize the Denver Foundation to compel Wells Fargo to transfer the principal of the Sterne–Elder Trust.

### D. Termination of the Trust

Contrary to the Denver Foundation's contention, we also conclude the transfer of the principal of the Sterne–Elder Trust to the Denver Foundation would terminate the trust.

A trust terminates when a trustee ceases to owe any fiduciary obligation be-

cause of conveyance of the property that it holds. *Nat'l City Bank v. N. Ill. Univ.*, 353 Ill.App.3d 282, 288 Ill.Dec. 765, 818 N.E.2d 453 (2004). Thus, where the trustee conveys legal title to the trust property to the beneficiary with the entire beneficial interest, the legal and beneficial interests merge and the trust terminates. Restatement (Third) of Trusts § 69.

A trustee is essential to a trust. Restatement (Third) of Trusts § 31. One of several beneficiaries can be the sole trustee. However, a sole beneficiary of a trust cannot be the sole trustee of the trust. Restatement (Third) of Trusts § 32.

Here, conveyance of the principal of the Sterne–Elder Trust would remove Wells Fargo's fiduciary obligations. The Foundation would not replace Wells Fargo as trustee, but would manage the funds pursuant to its Declaration of Trust, acting like a trustee. Additionally, the Foundation controls the entire beneficial interest of the trust. Transferring legal title to the trust to the Foundation would merge the beneficial interest with the legal interest and terminate the trust.

The Foundation nevertheless argues that Article 3–1.4 prevents the termination of the trust. However, if its interpretation were accepted, the entire principal of the trust would be available for immediate distribution, in direct contravention of the Settlor's intention to create a perpetual charitable gift. We observe that on February 7, 2004, two days before the Foundation filed its amended complaint and motion for summary judgment in this lawsuit, the Foundation's Executive Committee passed a Resolution purporting to eliminate the restrictions placed on the Sterne–Elder Trust by the Settlor. The 2004 Resolution states:

> Pursuant to Article 2–3 of The Denver Foundation Declaration of Trust, the Board of Trustees hereby amends or eliminates all provisions of the Sterne–Elder Trust that would preclude Wells Fargo Bank from transferring all of the trust assets to The Denver Foundation's community endowment. This resolution specifically eliminates the provisions of Section 2(c)(3)(d) of the Stern–Elder Trust,

which provides that neither The Denver Foundation or its Distribution Committee is authorized to direct disbursement of principal, or invade the principal, of such Trust.

While we do not question the good faith of the Foundation, under its interpretation, there is nothing that would prevent the Foundation from transferring all the trust assets to the charities to whom the Foundation ultimately distributes its funds. We conclude such an interpretation would be inconsistent with the Settlor's intent.

The judgment is reversed, and the case is remanded with directions to enter summary judgment in favor of Wells Fargo.

Judge NEY * and Judge KAPELKE * concur.