541 So.2d 1348 (1989)
Louis SCHWARZKOPF, et al., Etc., Appellants,
v.
AMERICAN HEART ASSOCIATION OF GREATER MIAMI, INC., Etc., et al., Appellees.
No. 88-2317.
District Court of Appeal of Florida, Third District.
April 25, 1989.
*1349 Therrel Baisden & Meyer Weiss and Howard A. Setlin, Miami Beach, for appellants.
Bender, Bender, Chandler & Adair and Harry Bender, Coral Gables, for appellees.
Before SCHWARTZ, C.J., BARKDULL, J., and JOHN W. DELL, Associate Judge.
SCHWARTZ, Chief Judge.
Harold J. Ramsfelder's will left the remainder of his estate to three named trustees, who were to administer the trust, distribute the income quarterly to four wellknown charities for a period of ten years and then transfer the corpus to those same beneficiaries. The trust was duly established and the trustees carried out their duties for approximately seven months when, dissatisfied with the condition of the teeth of their equine donation, two of the charities,[1] the appellees American Heart Association of Greater Miami, Inc., and American Red Cross, brought the instant action to terminate the trust prematurely. Notwithstanding that the ten-year trust period had not expired, the trial court, in the order now before us, granted the relief sought and ordered immediate distribution of the capital on the ground that the existing trust was merely "passive ... with no active duties and decisions being made by the Trustees." This order was wrong and is reversed.
The ruling below is in totally insupportable disregard of the most fundamental principle of the law of trusts and estates: that, so long as no illegality is involved, anyone may do with his money as he wishes. Martin v. Munroe & Chambliss Nat'l Bank, 125 Fla. 65, 169 So. 582 (1936); Lieberman v. Golden (Fla. 3d DCA Case no. 88-1110, opinion filed, April 11, 1989); G. Bogert, Trusts & Trustees § 1000, at 434 (1983). In this instance, Mr. Ramsfelder decided, for whatever reasons,[2] to postpone distribution of the corpus for ten years. The trial judge had no authority  and no source of any such power is even suggested  to interfere with that decision.
It is the almost universal rule that a trust may not be terminated before the expiration of the term for which it is established. Byers v. Beddow, 106 Fla. 166, 170, 142 So. 894, 896 (1932). As we specifically said in Ginsburg v. Katz, 303 So.2d 340, 341 (Fla. 3d DCA 1974):
where there is a clear and unambiguous provision in a trust instrument as to duration of the trust, the matter will be governed by the trust instrument. See Johns v. Townsend, 1948, 160 Fla. 213, 34 So.2d 565, and Clement v. Charlotte Hospital Association, Inc., Fla.App. 1972, 137 So.2d 615.
Accord 4 W. Fratcher, Scott on Trusts § 334 (4th ed. 1989) ("Ordinarily it is provided in the trust instrument how long the trust shall continue. In such a case the trust will be terminated at the expiration of *1350 the period fixed by the terms of the trust."); Restatement (Second) of Trusts § 334 (1959). The order below obviously contravenes these principles.
Moreover, even assuming arguendo the possibility that the trust could be terminated if it were merely a passive or dry trust which served no useful purpose, Ramsfelder's testamentary trust does not come close to falling within this category. Instead, the trust is being actively administered and the reasons for its existence  the ownership and investment of its assets, the temporary preservation of capital, the postponement but eventual delivery of the corpus  constitute perhaps the most essential and common purposes of a trust entity. See G. Bogert, Trusts & Trustees § 1007, at 397-98.
The trial judge apparently thought that the charities could do better with the corpus they were eventually to receive than the trustees. It is enough to say in response that, under the law, such a decision is not entrusted to the trial court, however wise and well intentioned, but to the person whose money it was to distribute. After all, Mr. Ramsfelder need not have left his money to the Heart Association or the Red Cross at all and, it may be assumed, would not have done so if he had known that the conditions he had placed upon his gifts to them would be violated. It would have served them right.
Reversed.
NOTES
[1] The other two, the Mayo Foundation and the Lighthouse for the Blind, did not join in the action.
[2] While the decedent's "purpose" in establishing the terms of the trust (as perhaps opposed to the purpose served by the trust entity) is nobody's legal business, there is an indication in the record below that he wanted the charities to remember him and his bounty for at least the ten-year period, in contrast to what had happened to the memory of some of his deceased friends who had left their money outright. If it were relevant, which it isn't, this sounds like a pretty good and practical reason to us.