699 N.E.2d 1103 (1998)
298 Ill. App.3d 821
232 Ill.Dec. 918
In re ESTATE OF HELEN M. MANK, Deceased (Sally Palmer Canfield, Denise Ferchaud, Anne Stentiford, Gregory Stentiford, Mitchell Stentiford, Kari Stentiford-Bynum, Betsy Youngquist, Charles Youngquist, Jeremy Youngquist, Joseph Youngquist, Lance Youngquist, Matthew Youngquist, and Susannah Youngquist, Petitioners-Appellants,
v.
Stefan I. Mozer, Guardian of Alvin W. Mank, and First National Bank of Chicago, Adm'r with the Will Annexed of the Estate of Alvin W. Mank, Deceased, Respondents-Appellees).
No. 1-96-2699.
Appellate Court of Illinois, First District, Fifth Division.
August 14, 1998.
*1104 Michael J. Fahy, Chicago, for Petitioners-Appellants.
Michael J. Brody, Paul K. Rhoads, Rosalie Murphy, David C. Blickenstaff of Schiff, Hardin & Waite, Chicago, for First National Bank of Chicago.
James E. Ryan, Atty. Gen., Barbara A. Preiner, Sol. Gen., Chicago (John P. Schmidt, *1105 Asst. Atty. Gen., of counsel), for Charitable Trusts.
Justice THEIS delivered the opinion of the court:
We are asked to decide whether the trial court erred when, as a matter of public policy, it refused to disinherit a disabled adult ward under the terms of the in terrorem clause in his deceased sister's will because his court-appointed guardian, at the suggestion of the court, filed a petition to contest the will for the limited purpose of tolling the statute of limitations. For the following reasons, we affirm the trial court's decision not to enforce the clause.
Helen M. Mank (Helen) died testate on May 20, 1994, at the age of 95, leaving a substantial estate. At her death, Helen's sole heir was her brother and only sibling, Alvin W. Mank (Alvin). At the time of Helen's death, Alvin and Helen resided in the same building and held significant assets in joint tenancy.
In article 10 of her will (the will) of September 18, 1990, Helen bequeathed her condominium and its contents to Alvin, if he should survive her. The will also names Alvin as a co-executor of Helen's estate. Additionally, articles 5 through 9 and articles 11 and 12 of the will bequeath certain amounts of money and stocks to various individuals and charitable organizations. Specifically, article 11 of the will bequeaths to 17 individuals 1,000 shares each of Abbott Laboratories stock. Those 17 individuals are the nieces, nephews, grandnieces, grandnephews, and great-grandnephews of Helen's sister-in-law, Alvin's late wife. Certain of those individuals (the article 11 legatees) comprise the appellants in this action. Article 11 also contains an anticontest or in terrorem clause, which reads as follows:
"If any beneficiary shall commence or, except as required by law, participate in any proceedings to contest the validity of this will or especially Article 11 hereof, or to assert any claim based on an alleged agreement to make a will or otherwise dispose of my estate, such beneficiary shall forfeit whatever interest he would have taken under this will and my estate shall be administered and distributed as though he had predeceased me."
Article 13 of the will leaves one-half of the residue of Helen's estate to Alvin, if he survives her, and the other half, or whole if Alvin does not survive Helen, in equal shares to the individuals listed in article 11.
On June 22, 1995, Richard Moore (Moore or the executor), who was named in the will as a legatee and as successor executor, filed a petition for probate. On that date, Moore was appointed independent executor of Helen's estate and letters of office were issued.
Several weeks later in a separate proceeding on July 14, 1995, the circuit court adjudicated Alvin to be a disabled person. On August 31, 1995, the circuit court appointed Stefan Mozer (Mozer or the guardian) to serve as the successor guardian of the estate and person of Alvin W. Mank pursuant to sections 11a-3 and 11a-15 of the Probate Act of 1975. 755 ILCS 5/11a-3, 11a-15 (West 1994).
At some point, a question arose as to whether Moore could recover for the estate any of the assets held by Alvin and Helen in joint tenancy. A question also arose as to whether Mozer would contest Helen's will. These questions were resolved when Moore, as executor of Helen's estate, agreed to concede that all of the disputed joint assets were Alvin's, and, Mozer, as Alvin's guardian, agreed to waive Alvin's right to contest Helen's will. The proposed mutual settlement and release agreement was reduced to writing and submitted to the court for approval.
The circuit court proceedings as to Alvin's guardianship and settlement agreement were not included in the record on appeal. However, a memorandum filed by article 11 legatees in support of Sally Canfield's motion for distribution to substituted takers states that Mozer's petition for approval of the settlement was filed on or about November 29, 1995. That memorandum also indicates that on December 1, 1995, Mozer advised the circuit court of the petition, and the court appointed Barbara Chuhak Bernau, the guardian ad litem (GAL) of Alvin Mank who had been appointed to review fee petitions in the guardianship case, to review the settlement agreement. The parties agree that, at that time, Mozer apprised the circuit court of his belief that the deadline for filing a will *1106 contest was fast approaching and of his intention, if the necessity arose, to file a will contest petition before the deadline. The parties reference and do not dispute that the court responded to Mozer's concern with the following suggestion: "Perhaps you could file kind of a pro forma will contest petition to contest the will, so that it can be amended at a later time, but that's sufficient legally to toll the statute of limitations."
Accordingly, on December 14, 1995, Mozer, acting as guardian of Alvin's person and estate, filed a petition to contest Helen's will, asking the circuit court to set aside the will. Mozer alleged in the petition that Helen suffered from arteriosclerotic heart disease and various other ailments when she executed her will at the age of 91. Mozer further alleged that Helen lacked the requisite mental capacity to execute a will because she was "of unsound mind and memory and was unable to understand the nature and extent of her property."
Thereafter, the GAL submitted a report to the circuit court, stating that the proposed settlement agreement was in Alvin's best interests. Consequently, on January 23, 1996, the court entered an order approving the settlement agreement as a compromise of any claim on behalf of Alvin regarding the sufficiency of Helen's will. The order called for the withdrawal of the will contest with prejudice upon receipt of the executed agreement. However, for reasons not clear from the record, Mozer did not then file a motion to dismiss the will contest even though the agreement was executed the day after the order approving it was entered.
On March 22, 1996, Sally Canfield (Canfield), an article 11 legatee, filed a motion for distribution to substituted takers pursuant to former Rule 12.2(f) of the circuit court of Cook County. Cook Co. Cir. Ct. R. 12.2(f) (eff. April 27, 1984). At the same time, Canfield also filed a motion for summary judgment, seeking to disinherit Alvin under the in terrorem clause of Helen's will because Mozer had filed a petition to contest the will. Canfield requested that the bequest made to Alvin be redistributed to the article 11 legatees, some of whom, as previously noted, also filed memoranda in support of Canfield's motion.
On April 2, 1996, Mozer filed a petition to dismiss the will contest, attaching as exhibits a copy of the settlement agreement and a copy of the court's order approving the agreement and requiring, upon its execution, withdrawal of the will contest with prejudice. The same day, the circuit court granted Mozer's petition and dismissed the will contest with prejudice.
On April 19, 1996, Moore filed a petition, seeking directions from the circuit court as to whether the in terrorem clause was enforceable against Alvin. On May 13, 1996, the court entered an order stating that Canfield had withdrawn her motion for summary judgment. Thus, only Canfield's motion for distribution to substituted takers and Moore's request for instructions regarding the in terrorem clause remained, all other motions and petitions having been dismissed or ruled upon by the circuit court.
On June 26, 1996, the circuit court entered an order denying Canfield's motion for distribution to substituted takers. In denying the motion, the court issued the following instructions regarding the effect of the in terrorem clause pursuant to section 28-5 of the Act. 755 ILCS 5/28-5 (West 1994). The court found that the petition to contest the will had been dismissed with prejudice in keeping with the order entered on April 2, 1996, it having been represented to the court that all matters in controversy were settled. The court further found that it is against public policy in Illinois to enforce an in terrorem clause against a minor and concluded that, therefore, it is also against public policy to enforce an in terrorem clause against a disabled adult ward. Upon entry of the circuit court's order, 13 of the article 11 legatees filed this appeal.
Alvin died on December 29, 1996. The circuit court appointed the First National Bank of Chicago as administrator with the will annexed of the estate of Alvin W. Mank, deceased. This court permitted the administrator to be added as a party to this appeal on August 13, 1997. The Attorney General of the State of Illinois submitted a brief pursuant to his authority under the Illinois Charitable Trust Act (760 ILCS 55/1 et seq. (West 1996)), seeking to safeguard charitable *1107 bequests made by Alvin in his will, the amount of which would be reduced if the in terrorem clause of Helen's will were enforced.
Except as limited by statute or contract, a testator has the right to distribute her property as she wishes. Logsdon v. Logsdon, 412 Ill. 19, 26, 104 N.E.2d 622, 625 (1952); Continental Illinois National Bank & Trust Co. of Chicago v. Bailey, 104 Ill. App.3d 1131, 1139, 60 Ill.Dec. 860, 433 N.E.2d 1098, 1103 (1982). Moreover, it is fundamental that, in construing a will, the intention of the testator, as derived from the provisions of the will, is to be given effect unless contrary to law or in violation of public policy. Weber v. Hawkins, 30 Ill.2d 278, 283, 196 N.E.2d 695, 698 (1964); Weilmuenster v. Swanner, 404 Ill. 21, 24, 87 N.E.2d 756, 758 (1949). Additionally, a will must be construed as a whole and every word, phrase and clause given effect if possible. Feder v. Luster, 54 Ill.2d 6, 11, 294 N.E.2d 293, 295 (1973).
"Generally, conditions in a clause against contesting the will or attempting to set it aside are valid." In re Estate of Wojtalewicz, 93 Ill.App.3d 1061, 1063, 49 Ill.Dec. 564, 418 N.E.2d 418, 420 (1981) (in terrorem clause at issue, though valid and violated, held unenforceable as against law and public policy where legatee exercised statutory right to challenge appointment of executor of estate, alleging waste to estate resulting from proposed executor's inaction and conduct). However, though they may be valid, such clauses are disfavored and are strictly construed to avoid forfeiture. Wojtalewicz, 93 Ill.App.3d at 1063, 49 Ill.Dec. 564, 418 N.E.2d at 420. Illinois courts are further guided by "the well-established rule that equity does not favor forfeitures, and in construing conditions, both precedent and subsequent, a reasonable construction must be given in favor of the beneficiary." Clark v. Bentley, 398 Ill. 535, 540, 76 N.E.2d 438, 441 (1947).
As our supreme court previously emphasized, the proper disposition of a given case may not lie in a "purely lexicographical approach" to the in terrorem clause at issue but, rather, in the court's examination of the clause in relation to the peculiar position of the parties. See Oglesby v. Springfield Marine Bank, 25 Ill.2d 280, 287-89, 184 N.E.2d 874, 878-79 (1962). Similarly, in this case, our analysis does not begin and end with the language of the clause and the conduct at issue. Rather, we must consider whether, under the particular facts and circumstances of this case, application of the clause to the conduct would be contrary to the law or to the public policy of Illinois.
We turn first to Alvin's legal status and to the legal status of Mozer, the person who filed the petition to contest the will on his behalf. Alvin was adjudicated a disabled person, and the court appointed Mozer the guardian of Alvin's estate pursuant to section 11a-3(a) of the Act. 755 ILCS 5/11a-3 (West 1994). Section 11a-3(b) of the Act sets forth the general purpose and policy behind the appointment of a guardian for a disabled adult ward in this state: "Guardianship shall be utilized only as is necessary to promote the well-being of the disabled person, to protect him from neglect, exploitation, or abuse, and to encourage development of his maximum self-reliance and independence." 755 ILCS 5/11a-3(b) (West 1994).
In Illinois, "[t]he trial court protects the disabled person as its ward, vigilantly guarding the ward's property and viewing the ward as a favored person in the eyes of the law." In re Estate of Wellman, 174 Ill.2d 335, 348, 220 Ill.Dec. 360, 673 N.E.2d 272, 278 (1996). "Generally, the trial court functions in a central role which permits it to oversee and control all aspects of the management and protection of the incompetent's estate." In re Estate of Berger, 166 Ill.App.3d 1045, 1055, 117 Ill.Dec. 339, 520 N.E.2d 690, 696 (1987). The court controls the ward's person and estate and directs the guardian's care, management, and investment of the estate. Wellman, 174 Ill.2d at 348, 220 Ill.Dec. 360, 673 N.E.2d at 278. The guardian only acts as the hand of the court and is at all times subject to the court's direction in the manner in which the guardian provides for the care and support of the disabled person. In re Estate of Nelson, 250 Ill.App.3d 282, 287, 190 Ill.Dec. 212, 621 N.E.2d 81, 85 (1993).
*1108 The court's protection of an adult disabled person is effectuated by those appointed by the court to act as guardian of the ward's person, guardian of the ward's estate, guardian ad litem, and in some instances, counsel for the ward. "The appointment of a guardian creates the relation of trustee and beneficiary between the guardian and the ward." In re Estate of Wellman, 174 Ill.2d 335, 347, 220 Ill.Dec. 360, 673 N.E.2d 272, 278 (1996). Section 11a-17(a) of the Act specifically provides that the guardian for the person of a disabled adult is to act "[t]o the extent ordered by the court and under the direction of the court." (755 ILCS 11a-17(a) (West 1994)). The court is duty bound to intervene if the guardian of the person is about to cause harm or threaten harm to the ward. In re Estate of Nelson, 250 Ill.App.3d 282, 287, 190 Ill.Dec. 212, 621 N.E.2d 81, 85 (1993).
In this instance, Mozer, the court-appointed guardian who negotiated the mutual release and settlement agreement and filed the petition to contest the will on Alvin's behalf, was charged by statute with facilitating the trial court's protection of Alvin's estate and with promoting Alvin's wellbeing. At the same time, Bernau, in her capacity as GAL of Alvin, functioned as the "`eyes and ears of the court'" in determining whether the mutual release and settlement agreement was in Alvin's best interest. See In re Guardianship of Mabry, 281 Ill.App.3d 76, 88, 216 Ill.Dec. 848, 666 N.E.2d 16, 23-24 (1996), quoting In re Marriage of Wycoff, 266 Ill.App.3d 408, 415, 203 Ill.Dec. 338, 639 N.E.2d 897, 904 (1994).
Mozer's conduct, like the conduct at issue in Oglesby, was undertaken pursuant to a fiduciary duty owed by him to protect and promote the interests of another. In re Estate of Dyniewicz, 271 Ill.App.3d 616, 622, 208 Ill.Dec. 154, 648 N.E.2d 1076, 1081 (1995) (fiduciary relationship between guardian and ward is equivalent to one between trustee and beneficiary, rendering fiduciary duties owed similar as to each). In Oglesby, the court emphasized that the beneficiary was not asserting "a purely personal interest in derogation of the provisions of her mother's will." Oglesby, 25 Ill.2d at 288, 184 N.E.2d at 878. Rather, the beneficiary, "in her capacity as trustee, * * * was under an obligation to take the position and make the contentions she did in the earlier suit." Oglesby, 25 Ill.2d at 288, 184 N.E.2d at 878.
As in Oglesby, we cannot permit the conduct at issue here to result in forfeiture. Mozer filed the petition to contest the will pursuant to his duties as Alvin's guardian while under the direct supervision of the circuit court. However, there is nothing in the record to suggest that Mozer informed the court that Helen's will contained an in terrorem clause. Nor does the record show that the court did more than merely suggest that the petition be filed for the limited purpose of staying the statute of limitations until the court approved the settlement agreement. Where, as here, the court was unaware that the course of conduct it suggested could put Alvin at risk of forfeiture, it cannot reasonably be said to have authorized conduct from which forfeiture could flow. Equitable considerations preclude us from disinheriting Alvin where his court-appointed guardian failed to communicate to the court the contents of Helen's will thereby alerting the court of the potential consequences to Alvin of filing the petition. See Zimmerman v. Village of Skokie, 174 Ill.App.3d 1001, 1008, 124 Ill.Dec. 618, 529 N.E.2d 599, 603 (1988).
Consequently, rather than authorizing conduct that could be deemed to trigger forfeiture, we conclude that the court merely suggested a mechanism by which Mozer could protect Alvin's statutory right to contest Helen's will. The court suggested that Mozer could file a pro forma will contest for the limited procedural purpose of staying the statute of limitations until such time as the settlement agreement received court approval. The limited purpose the will contest petition was intended to serve is evidenced by the court order approving the settlement agreement resolving the question of ownership of the joint tenancy accounts and relinquishing Alvin's right to contest the will. That order required dismissal of the petition with prejudice upon execution of the agreement.
In addition, the character of Mozer's conduct, the filing of a petition to contest, was de minimis and substantively ineffectual once *1109 Alvin's agreement to surrender his right to contest the will was approved by the court. Accordingly, the order approving the settlement and release agreement and requiring dismissal of the petition with prejudice rendered the petition to contest a nullity. This stillborn petition to contest the will filed at the court's suggestion by Alvin's guardian cannot be allowed to work a forfeiture upon Alvin. To hold otherwise would elevate form over substance to work a forfeiture against one with whose care the court is charged based upon conduct authorized by statute and suggested by the court.
Because we conclude that, under the particular facts of this case, it would be against public policy to enforce the language to work a forfeiture against Alvin, we need not consider the other issues raised by this appeal. In so concluding, we emphasize that Helen's dispositional scheme is preserved, not contravened by our refusal to work a forfeiture in this instance.
Affirmed.
HOFFMAN, P.J., and HOURIHANE, J., concur.