NATIONAL CITY BANK OF MICHIGAN/ILLINOIS, as Trustee, Plaintiff-Appellant, v. NORTHERN ILLINOIS UNIVERSITY *et al.*, Defendants-Appellees.

Second District    No. 2—03—1281

Opinion filed November 5, 2004.

Timothy J. Howard and Janice M. Powell, both of Howard & Howard Attorneys, P.C., of Peoria, for appellant.

Daniel W. Luther and Sharon L. DeVault, both of Mayer, Brown, Rowe & Maw, L.L.P., of Chicago, for appellee Loyola University.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of counsel), for appellee People *ex rel.* James E. Ryan.

Michael T. Cyrs and Thomas P. Sandquist, both of Williams & McCarthy, P.C., of Rockford, for other appellees.

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, National City Bank of Michigan/Illinois (National City), in its capacity as trustee under the will of Genevieve O. Vrba, deceased, appeals from the trial court's order granting summary judgment in favor of defendants, Northern Illinois University (NIU), DePaul University (DePaul), Loyola University (Loyola), the Catholic Diocese of Rockford (the Diocese), Harvey Share, and the People of the State of Illinois *ex rel.* Attorney General James E. Ryan (Attorney General), on National City's complaint for declaratory judgment. In its complaint, National City requested the trial court to declare null and void a purported amendment (the amendment) to "The Vrba-O'Brien Scholarship Trust" (the Scholarship Trust) approved by defendants NIU, DePaul, the Diocese, and Share, in their capacity as members of the Scholarship Trust's "Advisory Committee" (Advisory Committee). The amendment directed National City to divide the corpus of the Scholarship Trust among defendants NIU, DePaul, Loyola, and the Diocese for the award of college scholarships at their individual direction. The trial court found that the amendment was valid and ordered that the Scholarship Trust's corpus be divided pursuant to the terms

of the amendment. On appeal, National City argues (1) the amendment was contrary to the provisions of Vrba's will; (2) the trial court erred in concluding that the amendment was binding; and (3) the trial court erred in relying upon certain conclusory statements contained in the affidavits supporting the motion for summary judgment. We reverse and remand with instructions that judgment be entered in National City's favor.

The following facts are relevant to the disposition of this appeal. Genevieve Vrba died on September 1, 1989. In her will, Vrba bequeathed a substantial portion of her estate to be held in trust as the Scholarship Trust. The De Kalb Bank was named in the will as the original trustee. National City is a successor to De Kalb Bank by operation of law. According to article V(C)(2) of Vrba's will, the purpose of the Scholarship Trust was as follows:

"It is my wish that this Scholarship Trust shall be administered primarily to provide scholarships to deserving persons from rural areas of certain midwestern states of the Catholic Faith, but not exclusively, to enable such persons to acquire and complete their undergraduate degrees, or their masters or doctors degrees, primarily in Catholic, but also in public and private colleges and universities. It is also my wish that those distributions made for purposes other than scholarships (which distributions shall not constitute ten (10%) percent of the distributions made annually) to deserving persons, shall include distributions to any kind of religious, charitable, scientific, literary, or educational institutions, including distributions to assist teachers in the primary and secondary educational institutions, to enhance the quality of the education in said institutions, but in no event shall such distributions be used to pay the salaries of any teachers or administrators. The Advisory Committee is also authorized to make distributions to the Newman Foundation, located at the Northern Illinois University in DeKalb, Illinois, in order to carry on their work in assisting students at the University. For purposes of the operation of this Scholarship Trust, it is anticipated that the majority of the persons receiving scholarships from this Scholarship Trust, shall reside in the states of Illinois, Iowa, Indiana, Wisconsin, or Michigan."

Article V(C)(3) of Vrba's will provides that the Scholarship Trust shall terminate 50 years after Vrba's death. Vrba's will provides that, at the time of termination, all accumulated corpus shall be distributed to the Diocese to be used for "providing scholarships to deserving persons."

Vrba's will also established the Advisory Committee to oversee the Scholarship Trust. Vrba's will provided that the Advisory Committee would consist of the following people: (1) a person appointed by the president of DePaul; (2) a person appointed by the president of NIU;

(3) a person appointed by the senior judge in age of the United States District Court having jurisdiction in De Kalb; (4) a person appointed by the Catholic Bishop of the Diocese; and (5) a person appointed by the president of Loyola. Article V(E)(1) of Vrba's will provided that a majority of the members of the Advisory Committee could amend the Scholarship Trust whenever, in their opinion, "it [was] necessary or advisable to enable the Trustee to carry out the purpose of the Scholarship Trust Estate more effectively." Vrba's will also authorized National City to use the assets of the Scholarship Trust to pay all administrative fees, including trustee fees and the meeting expenses of the Advisory Committee.

Between 1991 and 2001, the Advisory Committee awarded approximately $1.5 million in scholarships to students attending various universities. Some of the scholarships were awarded to students attending DePaul, Loyola, and NIU. However, scholarships were also awarded to students attending other universities.

On March 1, 2002, a majority of the members of the Advisory Committee executed an amendment agreement that purported to amend the terms of the Scholarship Trust. The amendment agreement was signed by the Advisory Committee members appointed by DePaul, NIU, the Diocese, and the senior United States District Court judge (collectively referred to as "the majority defendants"). The amendment directed National City to divide the Scholarship Trust's corpus into four separate shares and deliver shares to DePaul, NIU, and Loyola for use as scholarships to students attending only those universities. The remaining share was to be delivered to the Diocese to award scholarships consistent with the provisions of Vrba's will. DePaul, NIU, and Loyola were each to receive an 11.11% share of the Scholarship Trust's corpus, and the Diocese was to receive a 66.67% share. The amendment provided that "[e]ach separate share shall be held as a separate trust or similar permanent endowment fund by the institution so indicated, with the named institutions as sole Trustee or fiduciary."

On April 1, 2002, National City filed a complaint for declaratory judgment, seeking a declaration that the amendment exceeded the Advisory Committee's authority under the terms of Vrba's will. Specifically, National City alleged that the amendment was void because it was an improper termination of the Scholarship Trust and because it was contrary to the provisions of Vrba's will.

On May 8, 2002, the majority defendants filed a collective answer denying that they lacked authority to make the amendment. Loyola answered separately on May 22, 2002. Throughout the proceedings, Loyola has taken a position of neutrality with respect to the validity of the amendment.

On August 3, 2002, the majority defendants moved for summary judgment. In their motion, the majority defendants argued that the Advisory Committee had the authority to execute the amendment in question. The majority defendants further argued that the amendment did not improperly terminate the Scholarship Trust but, instead, separated the Scholarship Trust's corpus into "separate trust accounts." The majority defendants claimed that the division of the corpus in such a manner would eliminate the annual federal excise taxes, trustee fees, and meeting expenses incurred by the Scholarship Trust. These taxes and fees averaged $38,000 annually. The majority defendants argued that the money saved would permit the award of a greater number of scholarships, thereby more effectively achieving Vrba's purpose in creating the Scholarship Trust. In support of the motion, each of the majority defendants submitted an affidavit executed by an institutional official averring that each institution was "capable of efficiently and effectively carrying out the intentions of the Vrba-O'Brien Scholarship Trust."

On September 17, 2002, National City filed its own motion for judgment on the pleadings. In its motion, National City argued that the amendment was void because it constituted an improper termination of the Scholarship Trust and because it was contrary to the language of Vrba's will. National City also filed a motion to strike the affidavits accompanying the majority defendants' motion for summary judgment as conclusory, in violation of Supreme Court Rule 191(a) (210 Ill. 2d R. 191(a)).

On November 4, 2002, the Attorney General filed an appearance and a statement of support for the majority defendants' motion for summary judgment.

On February 26, 2003, following a hearing, the trial court entered an order granting the majority defendants' motion for summary judgment and denying National City's motion for judgment on the pleadings. National City subsequently moved for reconsideration, which the trial court denied on June 3, 2003. In denying the request for reconsideration, the trial court expressed its belief that the cost efficiency of the Scholarship Trust was a more important consideration than whether the Advisory Committee had the legal authority to execute the amendment. In response to National City's argument that the Advisory Committee lacked the legal authority to terminate the Scholarship Trust, the trial court stated:

> "You know you're telling me why technically, and that may be valid. I don't mean to diminish the seriousness of this argument, why technically I can't do what I did. But tell me practically, why is it not better for me to do what I did?"

The trial court ordered that the parties should proceed to "effectuate the terms and conditions of the Amendment Agreement in a reasonable manner and upon a reasonable time frame agreeable to the parties thereto." The trial court also denied National City's motion to strike the affidavits accompanying the majority defendants' motion for summary judgment. National City subsequently filed a timely notice of appeal. The Attorney General has filed a brief urging this court to affirm the trial court's judgment.

On appeal, National City contends that the trial court erred in granting the majority defendants' motion for summary judgment and in denying its motion for judgment on the pleadings. National City argues that, in upholding the amendment, the trial court improperly substituted its judgment as to the best use of the Scholarship Trust's funds for that specifically chosen by Vrba in her will. National City argues that the amendment improperly terminates the Scholarship Trust and improperly alters the purpose of the Scholarship Trust by creating scholarship endowments with DePaul, NIU, Loyola, and the Diocese. National City alternatively argues that the trial court erred in granting summary judgment based upon affidavits that did not conform to the requirements of Rule 191(a).

■ A motion for judgment on the pleadings and a motion for summary judgment both rely solely on the pleadings. *Westfield National Insurance Co. v. Long*, 348 Ill. App. 3d 987, 989 (2004). The entry of judgment on the pleadings or summary judgment is proper if the admissions contained in the pleadings disclose that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *Westfield*, 348 Ill. App. 3d at 989. In ruling on these motions, the trial court must view the evidence in the light most favorable to the nonmovant. *Westfield*, 348 Ill. App. 3d at 989; *Turner v. Roesner*, 193 Ill. App. 3d 482, 487 (1990). Our review of the disposition of a motion for judgment on the pleadings or a motion for summary judgment is *de novo. Westfield*, 348 Ill. App. 3d at 989; *Quinton v. Kuffer*, 221 Ill. App. 3d 466, 471 (1991).

■ Except as limited by statute or contract, a testator has the right to distribute his or her property as the testator sees fit. *In re Estate of Mank*, 298 Ill. App. 3d 821, 825 (1998). Moreover, in construing a will, the testator's intent, as derived from the provisions of the will, must be given effect unless contrary to law or in violation of public policy. *Mank*, 298 Ill. App. 3d at 825. The purposes of judicial construction of a will or a trust instrument are to ascertain the intent of the drafter and to carry it out (*Northern Illinois Medical Center v. Home State Bank of Crystal Lake*, 136 Ill. App. 3d 129, 145 (1985)), not to consider the justice or propriety of the disposition made in the

instrument (*In re Estate of Haines*, 51 Ill. App. 3d 163, 167 (1977)). In construing the scope of any amendment power conferred within a trust document, we are similarly bound by the intent of the settlor as evidenced by the plain meaning of the language contained within the trust document. *Olson v. Rossetter*, 399 Ill. 232, 238 (1948).

Article V(E)(1) of Vrba's will provides that the Scholarship Trust "may be amended from time to time by a majority of the Advisory Committee, whenever, in their opinion, it is necessary or advisable to enable the Trustee to carry out the purpose of the Scholarship Trust." However, article V(E)(2) limits this amendment power by prohibiting any amendment that "shall alter the intention that the Scholarship Trust Estate be operated exclusively for the purposes, and within the limits, set forth in Paragraph (C) herein." National City argues that the amendment violates this prohibition because it fails to honor Vrba's intentions as expressed in article V(C). Specifically, National City asserts that the amendment prematurely terminates the Scholarship Trust despite Vrba's expressed desire in article V(C)(3) that the Scholarship Trust continue for 50 years. National City further argues that the amendment improperly changes the purpose of the Scholarship Trust, as it creates specific scholarship endowments for the benefit of students attending only DePaul, NIU, and Loyola, despite Vrba's intention expressed in article V(C)(2) that trust assets be used to award scholarships to students attending all universities, both public and private. We consider each of these arguments in turn.

In response to National City's argument that the amendment improperly terminated the Scholarship Trust, the majority defendants do not appear to contest that they were without authority to terminate the Scholarship Trust prior to the 50-year term specified in article V(C)(3) of Vrba's will. Indeed, we note that our supreme court has previously held that trustees cannot utilize a general power of amendment to alter a fixed date of termination provided in a trust. See *Olson*, 399 Ill. at 242 (holding that a trust provision granting a trustee the power to "alter, amend or modify the trust agreement" was never intended to confer "authority to amend the trust agreement in so vital a part as to extend the period of its duration"). The majority defendants instead assert that the amendment did not terminate the Scholarship Trust but merely "separated" it into four separate trust accounts. We find this assertion unavailing.

■ The Restatement (Second) of Trusts defines a trust as a "fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement

(Second) of Trusts § 2 (1959). Every trust must have a settlor, a corpus, a trustee, and a beneficiary. Restatement (Second) of Trusts § 3 (1959). When a trustee conveys all the property that he or she holds, the trustee ceases to owe any fiduciary obligation to such property and such a conveyance terminates the trust. Restatement (Second) of Trusts § 342 (1959).

The amendment requires National City to convey all of the trust property to DePaul, NIU, Loyola, and the Diocese. The amendment directs National City to divide the corpus into separate shares and to "distribute the separate shares to the institutions so indicated." The amendment provides that "[e]ach separate share shall be held as a *separate trust or similar permanent endowment fund* by the institution so indicated, with the named institution as *sole Trustee or fiduciary*" (emphasis added). Because the amendment requires National City to convey all of the Scholarship Trust's property, National City's fiduciary obligation to such property would therefore terminate upon such a conveyance, and the Scholarship Trust would necessarily cease. See *Chicago Title & Trust Co. v. Steinitz*, 288 Ill. App. 3d 926, 933 (1997) (holding that trustee's act of conveying entire corpus terminated the trust).

In support of their assertion that the amendment directs a separation, rather than a termination, of the Trust, the majority defendants note that the amendment requires each of them to be bound as trustees to the exact terms and conditions of Vrba's will. Without any citation to authority, the majority defendants assert that the amendment "affirms that the Scholarship Trust will continue in trust form of organization, although in four separate trust accounts, each administered by its own successor trustee." However, the majority defendants cannot alter the legal consequences of the amendment simply by pledging to operate their separate trusts according to the terms of Vrba's will. As the amendment plainly directs National City to distribute the corpus completely and directs the various institutions to use their shares to provide scholarships to students attending only their institutions, we conclude that the amendment terminates the trust and was an improper exercise of the Advisory Committee's power of amendment. See *Olson*, 399 Ill. at 242; *Steinitz*, 288 Ill. App. 3d at 932-33.

We also agree with National City that the amendment improperly alters the purpose of the Scholarship Trust as expressed in article V(C) of Vrba's will. As quoted above, article V(C) directs the creation of the Scholarship Trust for the purpose of awarding scholarships to students from rural areas in the Midwest to attend both public and private colleges and universities. Although article V(C)(2) directs that

scholarships be granted primarily to Catholic students attending Catholic universities, it does not exclude consideration of non-Catholic students attending all public and private universities. Vrba's will also designated that the Scholarship Trust would continue for 50 years, at which time the remaining corpus would be distributed to the Diocese to provide scholarships to deserving persons. Vrba's will established the Scholarship Trust as a private foundation and directed National City to pay all expenses incurred in trust administration, including trustee fees and the expenses incurred by members of the Advisory Committee.

The amendment significantly deviates from the language of article V(C) of Vrba's will in several respects. First, as detailed above, the amendment prematurely terminates the Scholarship Trust despite Vrba's direction that it continue for 50 years. Second, the amendment directs the distribution of the entire corpus and effectively terminates the operation of the Scholarship Trust as a private foundation. As a result, the amendment thwarts Vrba's objective of creating an independent scholarship fund bearing her name. Third, the amendment distributes one-third of the corpus directly to DePaul, NIU, and Loyola for the award of scholarships at those three institutions. However, Vrba's will did not name DePaul, NIU, and Loyola as beneficiaries of the Scholarship Trust, and it specified that scholarships should be awarded to students attending all universities. Finally, Vrba designated that the Diocese would receive the *entire* trust corpus upon the 50-year termination date. The amendment, however, distributes only 66.67% of the corpus to the Diocese.

The majority defendants, joined by the Attorney General, assert that the amendment more effectively accomplishes Vrba's expressed intention to award scholarships. They argue that the separation of the trust into shares and the distribution of such shares to NIU, DePaul, Loyola, and the Diocese would eliminate most of the expenses of administering the Scholarship Trust, including federal excise taxes, the meeting expenses of the Advisory Committee, and trustee fees. The majority defendants assert that such savings could be used to award a greater number of scholarships. However, such an assertion rings hollow in light of the majority defendants' representation that the Scholarship Trust will continue even after the "separation" of the corpus. If the Scholarship Trust continues as theorized by the majority defendants, it will continue to have an obligation to pay annual federal excise taxes and will still have to pay trustee fees to administer the trust. Therefore, we question whether the amendment, as interpreted by the majority defendants, would result in any significant savings to the Scholarship Trust.

Indeed, as noted by National City at oral argument, there is no indication in the record that the majority defendants will be able to operate the Scholarship Trust more efficiently and with fewer administrative expenses. Instead, all that the majority defendants have offered are the conclusory statements in their representatives' affidavits that they are "capable of efficiently and effectively carrying out the intentions of the Vrba-O'Brien Scholarship Trust." Additionally, there is no indication that the majority defendants made any remedial attempts to reduce the Scholarship Trust's expenses prior to enacting the proposed amendment. There is no indication that the majority defendants attempted to reduce their own meeting expenses or approached National City about reducing its trustee fees.

Even assuming that the promised savings could be realized, the amendment nonetheless conflicts with Vrba's specific intention to create a private foundation that would last for 50 years. Had Vrba wished to make direct contributions to DePaul, NIU, Loyola, and the Diocese, she certainly could have done so in her will. Instead, Vrba chose to create an independent foundation to award scholarships to students attending all colleges and universities. As evidenced by her will, Vrba anticipated that the Scholarship Trust would incur federal excise taxes and trustee fees. Whether a more cost-effective method existed to achieve Vrba's charitable purpose, this court has no authority to ignore the language of her will. See *Schwarzkopf v. American Heart Ass'n of Greater Miami, Inc.*, 541 So. 2d 1348, 1350 (Fla. App. 1989) (rejecting request by beneficiaries to prematurely terminate trust in order to avoid unnecessary administrative costs). Instead, we are bound to honor Vrba's determination as to the proper distribution of the Scholarship Trust's corpus. See *Mank*, 298 Ill. App. 3d at 825.

Interestingly, as noted above, the trial court acknowledged that the majority defendants were "technically" without authority to execute the amendment. Nonetheless, the trial court determined that the more "practical" course of action was to uphold the amendment. Despite the trial court's best intentions, it too was without authority to disregard the plain language of Vrba's will and to substitute its opinion as to the appropriate disposition of her property. See *Schwarzkopf*, 541 So. 2d at 1350 (holding that the decision as to the best use of the corpus is "not entrusted to the trial court, however wise and well intentioned, but to the person whose money it was to distribute"). Enforcing the plain language of a decedent's will is a trial court's primary obligation and cannot be casually set aside as a legal "technicality." See *Northern Illinois Medical Center*, 136 Ill. App. 3d at 145. The majority defendants were obligated to uphold Vrba's intent in administering and amending the Scholarship Trust. For the reasons

discussed above, we conclude that the amendment improperly altered the purpose of the Scholarship Trust and was an improper exercise of the Advisory Committee's power of amendment.

■Alternatively, the majority defendants and the Attorney General request us to validate the amendment under the doctrine of either equitable deviation or *cy pres*. Under the doctrine of equitable deviation, a court may direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal. *Northern Illinois Medical Center*, 136 Ill. App. 3d at 149. Under the doctrine of *cy pres*, a court has the authority to redirect the application of the trust property to some other charitable purpose in an instance where it becomes impossible, impracticable, or illegal to carry out the particular charitable purpose designated by the settlor. *First National Bank of Chicago v. Elliott*, 406 Ill. 44, 56 (1950). We conclude that neither of these equitable doctrines is applicable here, as no impediment hinders the administration of the Scholarship Trust or the accomplishment of its charitable objective. We reject the majority defendants' assertion that the payment of federal excise taxes and administrative costs somehow renders the Scholarship Trust impracticable so as to require an equitable amendment of Vrba's will. The authority cited by the majority defendants is plainly distinguishable from this case and leads us to conclude that these equitable doctrines, which were never affirmatively pleaded below, have no application here. See *Village of Hinsdale v. Chicago City Missionary Society*, 375 Ill. 220 (1940).

■ We conclude that the trial court erred in denying National City's motion for judgment on the pleadings and in granting the majority defendants' motion for summary judgment. We therefore reverse the trial court's order granting summary judgment in defendants' favor, and we remand the case with instructions that the trial court enter judgment for National City and order NIU, DePaul, Loyola, and the Diocese to return all trust assets to National City. On remand, the trial court shall retain jurisdiction over the case to oversee the orderly and expeditious return of the assets to National City.

Our resolution of this issue renders unnecessary a consideration of National City's alternative contention regarding the propriety of the affidavits accompanying the majority defendants' motion for summary judgment.

For the foregoing reasons, we reverse the judgment of the circuit court of De Kalb County and remand the case with instructions.

Reversed and remanded with instructions.

GROMETER and CALLUM, JJ., concur.